167 So. 83

**LEADMAN v. FIRST NAT. BANK OF SHREVEPORT et al.**

No. 33535.

March 2, 1936.

Rehearing Denied March 30, 1936.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellants.

Albert P. Garland, of Shreveport, for appellee.

LAND, Justice.

Plaintiff, an emancipated minor, brings this suit to recover from the defendant, First National Bank of Shreveport, ten bonds of the Jackson-Harrison Company, Inc., in the sum of $1,000 each, together with an interest item of $300.

Plaintiff alleges that these bonds were purchased for his account by his mother and natural tutrix with his funds, and pledged, without his consent or any legal authority, by her to secure a personal obligation of his mother and tutrix to the defendant bank.

The defense is that the bonds do not belong to the minor; but, if they do, the bank is a holder in due course, and, since the bonds are negotiable instruments, the bank is entitled to retain them as security for the debt of the tutrix.

Judgment was rendered in the lower court in favor of plaintiff, as prayed for, and defendant bank has appealed.

(1) The father of plaintiff, Gabe M. Leadman, died in the year 1926. Deceased left considerable estate to plaintiff, his minor son, and to his widow, Mrs. Jessie T. Leadman, the mother of plaintiff. As beneficiaries in various insurance policies on the

life of deceased, Mrs. Leadman, now Mrs. Brewster, received $25,000, and the plaintiff, then a minor, $15,000.

These funds were deposited in two separate accounts in defendant bank; one in the name of "Mrs. Jessie T. Leadman," and the other in the name of "Mrs. Jessie T. Leadman, Tutrix Gabe M. Leadman, Jr."

The first question to be decided by this court is: Did the bonds belong to the minor at the time that they were pledged?

The evidence shows that on August 3, 1926, the tutrix of plaintiff purchased a $10,000 note of the Peavy-Moore Lumber Company, and paid for same by check drawn upon the tutrix account.

In 1927, this note was sold to defendant bank by the tutrix, and the proceeds were deposited to her personal account.

On October 19, 1926, Mrs. Leadman purchased two notes of the Shreveport Ice & Brewing Company for $5,000 each and these notes were sold on January 7, 1929, to the defendant bank, and the proceeds were deposited to her account as tutrix, thereby replacing the amount of the Peavy-Moore note of $10,000 purchased by her with the funds of the minor.

On the same date, January 7, 1929, Mrs. Leadman, now Mrs. Brewster, borrowed from the bank for her personal account $3,500, and on March 19, 1929, an additional sum of $4,000. This indebtedness remained unpaid on April 16, 1929, and, on that day, Mrs. Leadman, as tutrix, purchased from the City Savings Bank & Trust Company certain participating certificates of the City Savings Bank & Trust Company of the face value of $9,500, and paid for these certificates by check drawn on defendant bank against the tutrix's account.

On May 7, 1930, Mrs. Jessie T. Leadman borrowed from defendant bank the sum of $5,900 for the purpose of purchasing certain real estate in the city of Shreveport, and, instead of mortgaging the property, she was permitted by the bank to put up other security. The same participating certificates of the City Savings Bank & Trust Company, purchased with money from the tutrix account on April 16, 1929, constitute the security which was actually attached to this indebtedness of $5,900 of Mrs. Leadman. These participating certificates remained in the defendant bank as collateral security to the personal indebtedness of Mrs. Leadman until February, 1931, at which time most of them matured and were called by the City Savings Bank & Trust Company and the remaining one was repurchased. As Mrs. Leadman wanted to continue her investment, instead of accepting cash when the participating certificates were called in, she substituted and exchanged all of these certificates for $10,000 worth of Jackson-Harrison Company, Inc., First Mortgage Bonds, and these bonds were put up as collateral security for the personal debt of $5,900 of Mrs. Leadman. This transaction is shown in detail by document marked P–7, being an invoice emanating from the City Savings Bank & Trust Company.

These are the bonds in controversy in this suit.

There is no evidence in the record that Mrs. Leadman ever deposited any more

money in the tutrix's account than she owed that account. In each instance of a deposit, it represented an actual deposit of the minor's money, or a repayment of a sum which she had previously withdrawn from the minor's account, and had used herself. On the date that the participating certificates of the City Savings Bank & Trust Company were purchased, the funds were actually on deposit in the minor's account, and there is no reason to believe that any money in the minor's account belonged to his mother and tutrix, or to any one other than himself.

·The only real controversy over the ownership of these bonds grows out of the fact that Mrs. Leadman occasionally withdrew funds from the tutrix's account for the purchase of securities that were not shown to be for the minor's account. In view of the facts above stated, this controversy is without merit.

The records themselves of the City Savings Bank & Trust Company disclose the purchase in the name of the minor.

As the evidence clearly shows that the participating certificates were purchased for the account of the minor with his money, by a check drawn on his account, and that such purchase was made in his name, we find as a fact that these certificates were owned by the minor, and, necessarily, that the $10,000 worth of Jackson-Harrison Company, Inc., first mortgage bonds, for which they were exchanged, belong to the plaintiff.

The fact that the indebtedness for which these certificates were pledged, and for which the Jackson-Harrison Company bonds are now pledged, is the personal obligation of Mrs. Brewster is not disputed.

Now, as to the right of the minor to obtain possession of his property.

We find no allegation of fraud in defendant bank's answer that would justify us in attributing any conduct to plaintiff that would affect his legal rights.

Article 3148 of the Civil Code provides that: "Tutors of minors and curators of persons under interdiction, curators of vacant estates and of absent heirs, testamentary executors and other administrators named or confirmed by a judge, can not give in pledge the property confided to their administration, without being expressly authorized in the manner prescribed by law."

It is not contended that plaintiff consented to this pledge of his property. Nor is there any contention that the legal formalities were complied with and that an order of court was ever granted authorizing this pledge.

We adopt as our own the facts and conclusions reached by the able trial judge in determining whether or not the bank knew facts concerning the acquisition of the Jackson-Harrison bonds sufficient to charge it with notice of the actual ownership thereof in plaintiff.

We quote from the opinion of the trial judge as follows:

"Mr. Querbes was Mrs. Leadman's financial adviser, and had been for a long time; in fact, ever since her husband died.

"Mrs. Leadman carried two accounts with the First National Bank, one her personal

account and the other in her name as tutrix for her son, the plaintiff. She continuously advised with Mr. Querbes as to what investments she should make. Mr. Querbes says he advised her but did not deal with the details as to whether these investments were made on her personal behalf or on behalf of the minor.

"The discount department of the Bank, however, made investments for the minor's account, usually upon the specific authorization of Mrs. Leadman, in order to keep the funds of the minor out at interest. Notes on hand in the Bank approximating the sums that had been collected from matured obligations were sold to the minor and his account debited with the purchase price on numerous occasions without the issuance of a check, but sometimes a check was issued. These, however, were for small sums of money.

"In the matters involving large investments, Mr. Querbes was consulted as to the soundness of the investment, and the transaction was completed by check.

"Mr. Querbes was president of the First National Bank and he was likewise a member of the Board of Directors, and of the Discount Committee of the City Savings Bank & Trust Company.

"The close relationship between the First National Bank and the City Savings Bank & Trust Company was established in the evidence. The City Savings Bank & Trust Company was not owned by the First National Bank, but was owned by the stockholders of the First National Bank. Directors of the First National Bank, also were directors of the City Savings Bank & Trust

Company, although there were additional directors of the City Savings Bank & Trust Company who were not directors of the First National Bank. Officers of the City Savings Bank & Trust Company who were directly in charge of its affairs were not officers of the First National Bank. The First National Bank was organized under the national banking laws, and the City Savings Bank & Trust Company was organized only under the state banking laws. They occupied different buildings. There is no question but that the relationship of the two institutions was exceedingly close.

"Mr. Querbes according to his testimony, was familiar with the participating certificates issued by the City Savings Bank & Trust Company, knew them to be sound in this case, and so advised Mrs. Leadman.

"The records of the First National Bank show that she paid for these certificates with the tutrix's funds, and the Sales Record of the City Savings Bank & Trust Company shows the purchase of these certificates in the name of the minor. The interest collected therefrom by the First National Bank was credited to the minor's account. It had been held for about a year before being pledged for the tutrix's personal debt. After being so pledged, the interest was still paid to the minor's account, and at the time of the pledge, upon instructions of Mrs. Leadman, a notation was made on the back of the note as follows:

" 'All interest to go to the account of Mrs. Jessie T. Leadman, tutrix Gabe M. Leadman, Jr.'

"This notation is in the handwriting of Mr. Pat Hutchinson, who is in charge of

the discount department. He testifies that he made the notation, but does not remember the conversation leading up to it.

"After the Jackson-Harrison Company bonds were substituted for these participating certificates the interest from them was likewise credited to the account of the minor.

"When the participating certificates, that is $9,000.00 worth, matured, Mrs. Leadman consulted Mr. Querbes, with regard to what security should be substituted therefor, and he referred her to Mr. Tommie Lancaster of the City Savings Bank & Trust Company. Mr. Lancaster recommended Jackson-Harrison Company bonds as being available for sale to her by the City Savings Bank & Trust Company, and Mr. Querbes was again consulted as to their soundness. He agreed that they were all right, and that he would accept them as security for her indebtedness in lieu of the City Savings Bank & Trust Company participating certificates.

"The evidence is not clear as to the details of this substitution with regard to the physical facts; but we are convinced that the actual transfer must have been perfected by some employee of the First National Bank for the reason that the participating certificates would hardly have been released to Mrs. Leadman until she produced the Jackson-Harrison bonds. In other words, it must have been a simultaneous transaction, and the records of the City Savings Bank & Trust Company bear out this contention.

"The invoice of that bank shows the entire transaction, and coupled with the other facts, shows that the participating certificates were surrendered for $9,500.00, and interest coupon for $270.00, and accrued interest on the $500.00 bond $19.17. This made a total of $9,789.17. The difference between that and the $10,000.00 purchase price of the Jackson-Harrison Company bonds is $210.83, and the record shows that Mrs. Leadman gave a tutrix check for that sum.

"Now in transferring the participating certificates of the City Savings Bank & Trust Company and in receiving the Jackson-Harrison Company bonds and attaching them to the indebtedness of Mrs. Leadman, some agent or official of the Bank is bound to have acted both for the Bank and for Mrs. Leadman. He was involved in and a party to the transaction, in law. He knew that the Jackson-Harrison Company bonds were purchased with the property and the funds of the minor, whether Mr. Querbes in his conversations with Mrs. Leadman actually knew this fact or not.

"It would be difficult, indeed, to hold that the Bank was not charged with notice in any event, charged as it is with actual notice that the interest on these securities was to be paid to the minor's account. Lengthy explanations by the witnesses have shown that these records did not necessarily indicate ownership, and we are glad to accept that interpretation; but none the less it certainly puts them upon inquiry in dealing with a person in a fiduciary account, and the debt is that of the fiduciary personally.

"It strikes us that the cumulation of the intricately close relationships in this case

cannot be overlooked in considering facts pointing to the good faith intended by the Negotiable Instrument Law (Act No. 64 of 1904).

"The various cases cited by defendant from other jurisdictions to the effect that when stolen bonds are pledged to a bank the owner cannot recover from the bank unless he shows actual dishonesty, we believe have no bearing on this case. In the case of an ordinary stealing there is nothing to put the bank on notice of any kind; and in none of those cases have we found evidence of the close relationship existing as in this case.

"We believe the very language of the Negotiable Instrument Law requires us to consider all of these facts:

" 'The person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.' Section 56.

"To reiterate, we conceive of such facts as being:

"(1) The close relationship between the two banking institutions, the officers thereof, and Mr. Querbes' connection with the two institutions personally.

"(2) That the records of the City Savings Bank & Trust Company showed ownership in the minor.

"(3) That interest on the securities was ordered paid to the minor's account, and a notation on the note made to that effect.

"(4) That the tickler system of the Bank likewise showed that interest should be paid to the minor's account.

"(5) The fact that the personal account and the fiduciary account were both in the First National Bank, and the Bank exercised certain prerogatives in investing funds out of the minor's account.

"(6) The fact that Mr. Querbes was the financial adviser of Mrs. Leadman.

"(7) That the substitution of the Jackson-Harrison Company bonds for the participating certificates was participated in by the officers or agents of the First National Bank. * * *" Tr. pp. 41–46, inclusive, vol. I.

"Other defenses set up are not urged by the defendant, particularly the plea of estoppel. This plea is probably not urged for the reason that the action of the plaintiff complained of therein has not prejudiced the position of the Bank in any way, the pledge having been consummated prior to the conduct complained of." Tr. p. 31.

Judgment was rendered in the lower court in favor of plaintiff, Gabe M. Leadman, Jr., and against defendant First National Bank of Shreveport, recognizing petitioner as the owner of the Jackson-Harrison Company bonds sued for and placed in pledge by Mrs. Jessie T. Leadman, now Mrs. W. O. Brewster, to the First National Bank of Shreveport, entitling plaintiff to possession of said bonds, and for $300 interest.

Plaintiff was also recognized and decreed to be the owner of cashier's check No. 92081 of the defendant First National Bank of Shreveport, made payable to the order of said bank, dated March 17, 1934, for the sum of $300, representing the interest on the above-mentioned bonds due on March 15, 1934.

The First National Bank is ordered in said judgment to deliver to plaintiff said cashier's check, properly indorsed payable to the order of plaintiff, and the bonds sued for and so pledged, properly indorsed payable to the order of plaintiff, within 15 days from date of judgment, or, in default of such delivery of such cashier's check and such bonds within that delay, to pay to plaintiff the full sum of $10,300, with legal interest on such sum commencing 15 days from date of judgment.

We find no error in the judgment appealed from.

Judgment affirmed.